Elias A Felluss, Shareholder
Pro Se
71 Centershore Road
Centerport, NY 11721
United States of America
Tel. (631) 262-1876
Email: felluss@optonline.net



## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Calpine Corporation, et al | ) |  |
|  | ) |  |
| Debtors | ) | Related Docket. Nos. 7253, 7256, 7404 |
|  | ) |  |
|  | ) | Case No. 05-60200 (BRL) |
|  | ) | Jointly Administered |
|  | ) |  |

## STATEMENT OF ISSUES AND
## DESIGNATION OF THE RECORD ON APPEAL FROM FINAL ORDERS
## OF THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

Comes now Appellant Elias A Felluss, A Shareholder and movant, pursuant to Federal Rule of Bankruptcy Procedure 8006, pro se, in the lower court decision to deny motion for reconsideration in the above captioned case, Calpine Corporation, Case No. 05-60200 (BRL) and as an "Objecting Shareholder" holder of Calpine Corporation common stock, PRO SE, hereby submits to the United States District Court for the Southern District of New York his statement of issues on appeal and designation of the record on appeal in connection with the Notice of Appeal filed by this Objecting Shareholder on January 28. 2008, Docket No 7504 in the above-captioned proceedings.

The Petitioner Appellant has standing to file this appeal, as the appellant was a movant in the lower court rulings. (See Dockets 7322, 7323,7363.7376,7377,7380,7397,7382 and 7478. *Inter alia*, filed December 28, 2007 and forward).

While the Petitioner is an individual shareholder and does not have the benefit of a deep legal bench, he will endeavor to not take the courts time with extraneous matters. The only protection this Petitioner enjoys are the Bench this tribunal provides and the Constitution of the United States of America.

## Designation of Items on Appeal

The following issues are on Appeal:

1. The Motion filed December 28, 2007, Docket 7322 was heard, but never ruled on. A hearing on motions by other shareholders was reference Docket No 7478. In those motions, the lower court ruled, namely, Compania Internacional Financiera, S.A., Coudree Global Equities Fund, Standard Bank of London and Leonardo Capital Fund SPC. Yet DID NOT rule on this Petitioner's *Motion to Reconsider*, where movant motioned the court to consider the ministerial errors in the plan and which were not ruled on with prejudice. The Petitioner believes either the Motion to Reconsider is pending or is a procedural error.

2. Whether the Bankruptcy Court erred in substantive law in confirming the Plan of Reorganization on December 19, 2008 in the cases of the Calpine Corporation, Case Number 05-60200, Dockets 7235, 7236 and 7237. What can only be viewed as highly irregular, the Court's Valuation Expert witness operated outside the normal scope reserved for a valuation expert. Then subsequently, and on the record, after the plan confirmation recanted his testimony.

3. Whether the December 19, 2007 Confirmation of the Plan of Reorganization which relied on the filing made on December 20, 2007 resulting in this Final Order of Approval, preempted the petitioners Due Process. All citizens are vested with rights afforded to them by the 5th and 14th Amendments of the US Constitution, Bill of Rights. Those rights were super-ordinated so to favor of the Debtor's desire to acquire favorable financing terms and qualify for handsome bonus packages, Docket 7235, 7236 and 7237.

4. Whether a Writ of Mandamus to address ministerial errors which have had a material effect on the outcome for the petitioner. Reference Docket 7228, Exhibit 21, Warrant Term Sheet. There have been many, this one was incompletely filed on December 18, 2007 but correctly filed after the affirming of the confirmation ruling was rendered of December 20, 2007 while the confirmation was approved on December 19, 2007.

5. Violation of the "Trust Fund" theories. The record is replete with clear violations of the trust fund theory of absolute priority. The record, if unsealed, would show its origins together with what has been put on the record, albeit, in fragments, support the preponderance of evidence that validate this conclusion.

## Preliminary Statement

Throughout the duration of these 2 years of hearings on these Calpine cases, a pattern has emerged. The Petitioner refers to it has the "Subsequent Truth" syndrome. The procedure is rather simple. Simply say one thing before a critical hearing date and subsequently correct it on a following date.

The advocates for both the creditors and the debtors have consistently misled the lower court - either by strategic design or inadvertence - in forming foundations in logic upon which findings were made, and then, at a subsequent date, revise those base assumptions therefore having a material impact on results. The Appellant believes had they been presented in their final format for the Court to review, perhaps, the Court would have found another outcome.

The record is replete with incidents where decisions are made only to find the basis of those decisions are revised following the court's order.

This record suggests a pattern of prima facie substantive errors where testimony given and accepted as a predicate for a decision is the next day altered yet never addressed by the presiding judge. It is odious and gives the appearance of a cabal to defraud the justice and shareholders.

This Appellant petitioner believes the public record supports this as evidentially true.

Judge Lifland who presided over these bankruptcy hearings is a strong proponent of the "Trust Fund" theory as it resolves priority of claims and is no doubt the reason the debtors and creditors had sought his jurisdiction to have their cases heard.

One of the very simple and uncomplicated rules of the "Trust Fund" theory is that of fiduciary and who is owed what and when. The record shows that from the outset of these lower court hearings, the only difference between the Creditor's counsel and the Debtor's counsel was the name of their law firm.

These hearings have so far been a successful effort by a clever, mean spirited team effort to defrock investors' equity.

This Appellate Court might suggest "you had your chance to speak but it is equitably moot as the distributions have been made".

If the latter is true, well then, it would be fair to proffer  "Would 'justice' also say if a band of robbers distributes their loot, the robbery was equitably moot?"

The greater "public Interest" is served when juris considers the broader impact on the financial markets when hearings such as these, which impact so many and benefit so few, is served.

It is unseemly for the debtors and creditors to have collaborated as early as the Summer of 2007, amongst earlier times, in the FERC application designating new ownership of the power plant facilities of Calpine. It would seem to be a clear violation of the "Trust Fund" and Fiduciary theories that form the foundation of real property title. In other words, before an official confirmation of the disclosure statement, and any valuation had been presented to the lower court, the debtor transferred his fiduciary to the creditors.

## Statements on the Issues of Appeal

**1. The Motion filed December 28, 2007, Docket 7322 was heard, but never ruled on**. The Petitioner has every right to expect a decision on the merits of his motion, and not be bundled in a conclusion of the interests of yet another petitioner who are also movants. This Petitioner has been unable to find any citations to support the court's failure to rule with prejudice on the motion, except in an order to remand to the lower court to rehear the motion. SECRETARY OF LABOR, MINE SAFETY AND HEALTH : ADMINISTRATION (MSHA) v. BLACK DIAMOND CONSTRUCTION, INC ( Docket No. EAJ 98-1) where the appellate remanded the motion to be reheard.

A hearing on motions by other shareholders was reference in the prepared denial by Judge Lifland, Docket No 7478. In those motions, the lower court ruled, namely, on the motions of Compania Internacional Financiera, S.A., Coudree Global Equities Fund, Standard Bank of London and Leonardo Capital Fund AND did not rule on this Petitioner's *Motion to Reconsider*, where movant motioned the court to consider the ministerial errors in the plan and which were not ruled on with prejudice.

The Petitioner either still has a "Motion to Reconsider" pending or is a procedural error.

**2. Whether the Bankruptcy Court erred in substantive law** in confirming the Plan of Reorganization on December 19, 2008 in the cases of the Calpine Corporation, Case Number 05-60200, Dockets 7235, 7236 and 7237.

What can only be viewed as highly irregular, the Court's Valuation Expert witness, Bridges Company, informed the court in open testimony on Monday, December 17, 2008 that "Under the Power of this Court" he was able to have all the parties come to an agreement. Bridges was the court appointed expert who was a hire to find a value for the company as there were very contentious views on the subject being presented by the parties in interest. In the Bridges Executive Summary, filed soon thereafter their testimony, the Bridges report stated quite plainly he "just didn't have the time to prepare own valuation and instead used what numbers he was provided by the debtors and

creditors. He then stated he proceeded to *enforce* a settlement between creditors, debtors and the shareholders committee.

The Petitioner is not sure that was what Congress had contemplated when it wrote the statutory provision allowing latitude to the court to make such a hire.
**3. Whether the rules of Due Process** were observed during the December 19, 2007 Confirmation of the Plan of Reorganization which relied on the filing made on December 20, 2007 resulting in this Final Order of Approval, preempted the petitioners Due Process.

It is fair to say that shareholders should have spoken out the day the confirmation was confirmed, but only if all the facts of the confirmation were known. The rule of Laches speaks directly to this, except that the rule requires full disclosure of the facts and merits of the objection.

It cannot be that objections by opponents should be made based on subsequent filings, and in this case, made the day after the confirmed plan was approved, unless the appellate court contemplates "tea leaves" as a basis for an objection.

Because the Petitioner had no knowledge of the actual details specified in the last version of Exhibit 21 until Thursday, December 20, 2007 (See Exhibit 1 as this filing "slipped through the cracks" and does not appear on the record until late or at all).

It would have been impossible to object to the confirmation on Wednesday, December 19, 2007. When all the facts could only have been known until Thursday, December 20, 2008.

All that to say, an objection on the facts would have been impossible. The Petitioner's belief is *laches* does not apply.

Therefore procedurally, the Petitioner's right to due process has been violated.

All citizens whether US or not, are vested with rights afforded to them by the 5th and 14th Amendments of the US Constitution, Bill of Rights. Those rights were super-ordinated so to favor the Debtor's desire to acquire favorable financing terms and qualify for handsome bonus packages, Docket 7235, 7236 and 7237.

It is also disingenuous to find the transcript from the December 17, 2007 hearing that was dated by the Court's stenographer January 10, 2007(?) but not posted January 17, 2008 on the KCCLCC website, and expect shareholders who are widely dispersed to have known what had transpired.

**4. Whether a Writ of Mandamus** to address ministerial errors which have had a material effect on the outcome for the petitioner. Reference Docket 7228, Exhibit 21, Warrant Term Sheet.

A Writ of Mandamus is a power vested in the Court of Appeals. It is an extraordinary measure and should be taken with care and not lightly. The Supreme Court, as James Wm Moore, in Moore's Federal Practice S 204.01[2][c] (3d ed 1998) cited:

Section 1651(a) applies to the Supreme Court and "all courts established by Act of Congress." Congress did not itself establish Bankruptcy Appellate Panel (BAP) in the same way it established other federal courts. Instead, since 1994, Congress has directed each circuit court to create a BAP, unless the judicial council of the circuit court finds that certain circumstances exist. And these Calpine cases may very well be ones where appellate review is necessary.

"Pursuant to 28 U.S.C. S 158(b)(1), the judicial council hereby establishes and continues a bankruptcy appellate panel to hear and determine appeals from judgments, orders and decrees entered by bankruptcy judges" was the enlightened view of the Ninth Circuit Amended Order Establishing and Continuing the Bankruptcy Appellate Panel. Congress could have been said to have established BAP's under dictionary definitions because BAP's did not exist before Congress provided authority for them in1994.

So it is with the greatest respect the Petitioner would move this court to make such a consideration.

It is not the Petitioner's intent to have the court examine each and every instance of ministerial error but only to call attention to the fact there have been errors. In a bankruptcy of this size, the rounding off of numbers can be a material difference. A .06 basis point difference in numerology can have an impact of $600,000,000. For instance, the difference "between the stipulated settlement amount and the Miller Buckfire net "TEV" valuations prior to December 17, 2007 and also prior to the lower court's intervention in the settlement discussions that took place on Sunday, December 16, 2007 was a fractional .06. The point here is not the difference between valuations which have already been stipulated to, but fractional differences between numbers equates to significant and often huge sums.

There have been many "Exhibit 21's". Each one varied fractionally. This latest version was incompletely filed on December 18, 2007 but correctly filed on December 20, 2007 after the affirming of the confirmation ruling was rendered on December 19, 2007,.

What it says is in its complete form, the actual strike price of the warrants will be 141%, not 115%. The Creditors and Debtors have led the court to believe it would have a different outcome.

The December 17, 2007 transcript states, "The exercise price of the warrants will be in an amount per share to be determined, but intended to be 115 percent of the value per share, based on $11.942 billion in value of reorganized Calpine equity value."

For a bankruptcy court to approve a proposed reorganization plan on a consensual basis, the proponent of the plan must show that the plan satisfies the requirements of 1129(a). Section 1129(a) contains the following requirement, inter alia, " the plan has been proposed in good faith with respect to each dissenting creditor in an impaired class,  and the creditor will receive or retain under the Chapter 11 plan on account of its claim, as of the effective date of the plan, an amount not less (nor more) than the amount the creditor would receive if the debtor were liquidated under Chapter 7".

The creditor is owed only the contract amount the debtor is obliged to pay and nothing more.

Issue at hand...If the court examines the most current version of Exhibit 21 filed on December 20, 2008, the court can observe that the "Total Net Claims" amount is $19.552 Billion.

This differs widely from the agreed on $18.95 billion agreed to in the TEV and confirmed by the court on December 19, 2008. By using the 19.552 billion number the debtors have effectively raised the reorganized equity by the $600 million. In addition the calculation of the equity strike price calculation included a 15% "appreciation" on the whole $19.552 net claims which claims contain more than 50% debt. Debt by definition has very little to do with equity and equity share price. Correctly, debt is later subtracted, but the 15% premium on the debt is incorrectly left to be included in the equity strike price. And in so doing the difference equates to an incorrect valuation for the warrants. The result of the corrections to the calculation would result in a warrant strike price close to 115% of reorganized equity per share, rather than 141% which by the definition in the December 17 Court transcript is wrong.

Taking the latest version again, the total TEV is $22.485 Billion. Subtracting out the Miller Buckfire Debt Net of Project Cash of $11.037 Billion and adding back in Corporate cash, we arrive at an equity strike price of $11.942 Billion and that divided by 500,000,000 shares comes to $23.88...HOWEVER, if the stipulated agreement calls for a TEV of $18.95 Billion, and a fractional difference of .06 or $600,000,000....or something better than $1.20 per old share.

MOREOVER, based on the new strike price the Creditors who substantially make up the new ownership of Calpine would receive some $9.7 Billion dollars through conversion of the warrants...not $11.942 Billion dollars as they are being paid.

One would believe that difference should flow to the old equity and represents in excess of $2 Billion or $4.00 per old share implementing the "waterfall" methodology....instead, this petitioner is given a worthless warrant set to expire in 6 months and told to say thank you!


Said another way:
-On Dec 17 we thought the strike price would be 115% of the share price based on

reorganized value.
-On Dec19 the Plan was confirmed.
-On Dec 20 details of the $11.942 billion were made available.

We found the calculation used was $19.55 billion claims rather than $18.95 agreed on enterprise value. It also factored up the whole $19.55 billion by 15% and not just the equity portion.

Based on information taken from the warrant term sheet and using the $18.95 billion agreed on enterprise value the per share the equity value is approximately $16.82. The market confirms this price to be reasonable based on the when issued Calpine shares, which were trading at $16.90 on February 4, 2008.

Factoring up the $16.82 by a 15% premium would result in a $19.34 strike price The 23.88 strike price is actually 41% over the intrinsic share price not 15%...this is a ministerial error and should be addressed by the Higher Court.

Of course, this requires taking on face value that the 115% appreciation premium is correct. Without having public disclosure and knowledge of the closed negotiations and sealed court documents, the petitioner reserves the right that the 115% appreciation may not be correct.

Without the absent calculation shareholders would not have been able to determine that the $11,942 was designed to have the warrants issued 41% out of the money rather than 15% out of the money as per the December 17, 2007 transcript and December 19, 2007 confirmation.

The result was contrary to what we thought at the time of the Confirmation Hearing that the warrants would be issued at a 15% premium and 15% did not mean 41%.

A reading of the transcript during the period which Mr Seligman spoke (Counsel for the Debtor) reads as follows:

http://www.kccllc.net/documents/0560200/0560200080118000000000001.pdf

"10 This settlement is also, your Honor, conditioned
11 upon quick approval of the plan modifications that will need
12 to be put in place to embody the settlement.
13 Your Honor, the most significant terms of the
14 warrants are that the number of warrants will be equal to ten
15 percent of the total undiluted issued and outstanding equity
16 of reorganized Calpine on the effective date. The exercise
17 price of the warrants will be in an amount per share to be
18 determined, but intended to be 115 percent of the value per
19 share, based on $11.942 billion in value of reorganized
20 Calpine equity value. And the expiration date of the
21 warrants, your Honor, it will be August 25th of 2008."

What we heard on December 17, 2007 was Mr. Cieri's soliloquy regarding the warrants and their pricing which is excerpted below:

Hearing date on December 17, 2007

http://www.kccllc.net/documents/0560200/0560200080118000000000001.pdf

P R O C E E D I N G S
"THE COURT: Be seated, please. Good morning.

MR. CIERI: Good morning, your Honor. Richard Cieri of Kirkland & Ellis on behalf of the Calpine debtors. Your Honor, could I take a few minutes to apprise the court of where we stand with respect to the confirmation process?

THE COURT: You don't have to explain it to me. But you can explain it to everybody else here.

MR. CIERI: Okay, thank you very much, your Honor.

Your Honor, we are going to request an adjournment of the confirmation hearing until Wednesday. And your Honor, the reasons for that requested adjournment will be clear as I bring the court through where we stand with respect to the confirmation process and the objections that are still extant to the planned reorganization.

Your Honor, as may have been reported to you, the debtors, the creditors' committee and the equity committee tentatively reached a settlement of the valuation issues in this case. This settlement essentially provides for the following:

The stipulated value for purposes of the plan of Calpine's Total Enterprise Value, or TEV is settled at $18.95 billion under the plan. This value compares to Miller Buckfire's valuation of 19.35 billion, Lazard's valuation of 16.25 billion (1), and Perella Weinberg's valuation of 23.2 billion.

Your Honor, it is also proposed that the equity holders will also receive certain warrants under the plan that I will describe to you in a minute. Equity will receive no other consideration under the plan and any stock of the reorganization Calpine made in the claims reserve after claims are paid in full will be cancelled. This settlement is also, your Honor, conditioned upon quick approval of the plan modifications that will need to be put in place to embody the settlement. Your Honor, the most significant terms of the warrants are that the number of warrants will be equal to ten percent of the total undiluted issued and outstanding equity of reorganized Calpine on the effective date. The exercise price of the warrants will be in an amount per share to be determined, but intended to be 115 percent of the value per share, based on $11.942 billion in value of reorganized Calpine equity value. And the expiration date of the warrants, your Honor, it will be August 25th of 2008.

Your Honor, that's a report with respect to the settlement discussions that have taken place over the weekend with the equity committee and those settlement discussions were expedited by the court's appointed expert, Mr. Schnelling, along with Mr. Togut, who served as his counsel. And we are very grateful for here help.

THE COURT: Does anyone else want to be heard?"

Only with the December 20, 2008 filing was it demonstrated that that the warrants would be issued 41 % out-of-the-money .

What would an intelligent person think the 115% of the value per share mean without the necessary information to know it meant something that was not apparent?

The Petitioner believes there is a good chance in their haste the $11.942 Billion strike price equity was calculated wrong and they are playing the game with a straight face.[1] The Petitioner would be remiss to not say after two years of following this episodic journey, he has observed the only difference between Mr. Seligman/Cieri and Mr. Stamer are the names of their respective law firms.

The only way to know what they thought the "terms sheet" meant is to ask them in a deposition.

If you say the same thing over and over, it suddenly as if by magic, seems to be the truth.

The Warrant Term Sheet and coincident pricing formula fails the test of reason and one can only conclude "the settlement" was made under duress advanced under "the power of the court" or individually by the court appointed expert on valuation, namely, Bridges.

The Warrant Term Sheet may not be wrong, but the calculations are in error, or they didn't mean what they said they meant on the record.

The record, if unsealed, would validate together with what has been put on the fragmented record and support by the preponderance of evidence this conclusion.


**5. Violation of the "Trust Fund" theories.** The record is replete with clear violations of the trust fund theory as it relates to absolute priority. In the Petitioner's motion, Docket 7322, *Motion to Reconsider*, mention is made the Debtors prematurely abandoned shareholders when it wrote down assets at the time these cases were filed sending the Calpine Estate into near insolvency, but not yet insolvent. At the time, the Board of Directors and CEO Mr. Robert May owed a fiduciary duty to shareholders, which they abandoned and wrongfully transferred that duty to the Creditors. In effect, "they threw the baby out with the bath water."

Even a conservative view of the Trust Fund Doctrine states that the fiduciary of management will stay with the Equity class until such time as it has been found to be hopelessly insolvent. The doctrine also states that all that is owed creditors is the contract amount of their debt together with any default penalties.

---

[1] Lehman Brothers has a recent valuation in excess of $22 Billion.

One of the fundamental principles that govern the "Trust Fund" doctrine implemented in bankruptcy hearings has to do with two basic principles,: 1: To Whom is owed a fiduciary duty and when (WHAT IS EXACTLY OWED THE CREDITORS)and 2. What exactly is the "Absolute Priority" distribution meant to include?

When the Debtor prematurely transferred its fiduciary duty to the Creditors from the shareholders resulted in a breach in the Trust Fund theory and
In the summer of 2007, the Calpine Debtor Management co-filed for a Federal Energy Regulatory Commission (FERC) licensing permit indicating a change of ownership to Harbinger. This was done prior to even the first ratification of the Disclosure Statement, much less a presentation of the "Plan for Reorganization" and makes evident what the true intentions of the Debtor Management were and is.

To make matters worse and in support of the misguidance of the Debtor Management, the Petitioner presents in evidence a copy of an email from the Debtor Management through its marketing agent, Melissa Morlan to Calpine employees. In part it states that they should not sell their shares, that they will be valued somewhere in the vicinity of $5.00. (See Exhibit 2)

The Petitioner understands no new evidence can enter an appellate hearing, however, in this case it is important for the court to know how the management deceived not only shareholders, but their very own employees. This letter was circulated at around the time the Debtor Management filed the FERC Co Application with Harbinger. And why any numbers they have represented should be viewed with a great deal of suspicion.

This breach of fiduciary duty is a substantive ground for re-contemplating this entire bankruptcy proceeding. The excess's of the 19th and early 20th Century have been revisited in the 21st Century.

## Conclusions

As reports from Barron's and Reuter's attest, things in the green energy sector are looking up. Barron's states asset values for generators could trade up 80 per cent from present values as the need for more independent power production escalates.

There is no doubt the Creditors and Debtors will object to this appeal, but they are not Judges. One can only speculate what motivates these minions of justice to deprive so many to enrich so few.

"The Glass" which contains what has transpired here is opaque when it should have been transparent so all the layers of justice are in plain view.

Opaqueness does not serve the public interest. Citizens are asked to invest with confidence their surplus dollars in a vehicle meant to enrich our collective economy and drive the engines of

industry. In the United States, we have every right to an expectation the courts will protect our rights to property.

Shareholders should be shown respect for putting it on the line even under the most dower circumstances, not the door.

Should this appeal cause some delay, well, that could be a problem, but the broader interests of the markets are better served than those of narrower interest.

It has been said these Calpine cases have been "a model of bankruptcy advocacy," the Petitioner believes it has a been a textbook example in how to eviscerate investors and their rights to real property.

## Remedies

1. Remand for a complete forensic accounting by impartial accountancy before the warrant prices are struck and whatever else the Appellate court deems appropriate
2. If it is found that for some reason equity exists for the old shareholders, they ought to be given shares in the new company.
3. If warrants are found to be appropriate, they should be freely traded as are the warrants issued to management, and of the same durations, namely 120 months.
What is good for the goose is good for the gander.

Dated:  February 5, 2008
Centerport, New York
Respectfully submitted,

Elias A Felluss, pro se
71 Centershore Road
Centerport, NY 11721
Tel. 631-262-1876
Email: felluss@optonline.net

-Remainder of page left intentionally blank-

The parties to the orders appealed from, as well as the names, addresses and phone numbers of their respective counsel, to the extent known, are as follows:

Parties Counsel
SONNENSCHEIN NATH & ROSENTHAL LLP
By: /s/ Peter D. Wolfson
Peter D. Wolfson (PDW-5956)
Carole Neville (CN-5733)
Matthew B. Stein (MBS-0062)
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800

Debtors
KIRKLAND & ELLIS LLP
David Seligman c/o
      Alexandra Shaw Kelly
Richard M. Cieri
Edward Sassower
Matthew Allen Cantor
Robert G. Burns
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800

Official Committee of Unsecured
Creditors

AKIN GUMP STRAUSS HAUER & FELD LLP
Michael S. Stamer
Philip C. Dublin
Alexis Freeman
David M. Zensky
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000

TransCanada PipeLines Limited, NOVA
Gas, et al

ELROD, PLLC
David W. Elrod
Craig Tadlock
500 N. Akard Street
Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188

Harbinger Capital Partners Master
Fund I, Ltd. and
Harbinger Capital Partners Special
Situations Fund
L.P. (including any affiliates
thereof)

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein
Joshua K. Brody
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

FORMAN HOLT ELIADES & RAVIN LLC
Harry M. Gutfleish (HMG-6483)
Joseph M. Cerra (JMC-0903)
888 Seventh Avenue
New York, New York 10106
Tel: (212) 707-8500
Fax: (212) 707-8511
80 Route 4 East, Suite 290
Paramus, NJ 07652
Tel: (201) 845-1000
Fax: (201) 845-9112

Simpson Thatcher et al
Peter Panatelo
425 Lexington Avenue
New York, NY 10017

Gary Kaplan
Fried Frank and Jacobson
1 New York Plaza
New York, NY 10004

Patricia Schrage
US Securities Exchange Commission
3 World Financial Center, Suite 400
New York, NY 10281-1022
212) 336-1100

Paul Schwarztberg
U.S. Trustee
33 Whitehall St 21st
New York, NY. 10004

Exhibit 1

KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Edward O. Sassower (ES 5823)

Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| Calpine Corporation, et al., | ) |
| | ) Case No. 05-60200 (BRL) |
| Debtors. | ) Jointly Administered |
| | ) |

**NOTICE OF FILING OF AMENDED EXHIBIT 21 TO PLAN SUPPLEMENT -
WARRANT TERM SHEET**

PLEASE TAKE NOTICE that *Exhibit 21 to Plan Supplement - Warrant Term Sheet*

("Exhibit 21"), was filed in the above-captioned proceedings on December 19, 2007 [Docket No.

7228] with an exhibit inadvertently omitted. A complete version of Exhibit 21 is attached

hereto.



Dated:   December 20, 2007
         New York, New York

Respectfully submitted,

*/s/ David R. Seligman*

Richard M. Cieri (RC 6062)
Marc Kieselstein (admitted *pro hac vice*)
David R. Seligman (admitted *pro hac vice*)
Edward O. Sassower (ES 5823)
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel for the Debtors

# Exhibit 21

# Warrant Term Sheet

## Calpine Term Sheet Regarding Warrants to be Issued to Holders of Interests Under Calpine Plan of Reorganization

**THIS TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. THIS TERM SHEET CONTAINS MATERIAL NON-PUBLIC INFORMATION ABOUT A PUBLIC COMPANY AND, THEREFORE, IS SUBJECT TO FEDERAL SECURITIES LAWS.**

This Term Sheet is among Calpine Corporation et al., debtors and debtors in possession in Case No. 05-60200 (BRL), pending in the United States Bankruptcy Court for the Southern District of New York (the "Debtors"), the Official Committee of Unsecured Creditors of Calpine Corporation et al. (the "Creditors Committee"), and the Official Committee of Equity Security Holders of Calpine Corporation (the "Equity Committee"), with respect to the issuance of warrants (the "Warrants") under the Debtors' Chapter 11 Joint Plan of Reorganization, as amended ("Plan").[1]

| | |
|---|---|
| Notional Amount of Warrant* | An amount to be determined and agreed among the Parties intended to be equal to 10% of the total undiluted issued and outstanding equity of Reorganized Calpine on the Effective Date. For illustrative purposes, assuming the issuance of 500 million shares on the Effective Date, the aggregate notional amount of the warrants would be 50 million. |
| Exercise Price* | For purposes of the Exercise Price on the Warrants only, an amount per share based on $11.942 billion of reorganized equity value as calculated on the attached exhibit. For purposes of clarity, in determining the Exercise Price, the $11.942 billion of reorganized equity value shall be deemed to remain constant; provided; however, if, prior to the Effective Date, there occurs any asset sale or other disposition of assets (other than those included in the Distributable Value in Miller Buckfire's expert report) and the proceeds of any such sale or distribution are not reinvested, retained or used to reduce the Reorganized Debtors' debt obligations, the Exercise Price shall be reduced by such amount that is not so reinvested, retained or used to reduce the |

---

[1]   Terms not otherwise defined herein shall have the same meaning as in the Plan.

| | |
|---|---|
| | Reorganized Debtors' debt obligations. The purpose of the foregoing sentence is to ensure that if equity value is reduced due to asset sales, the Exercise Price shall be reduced accordingly. For illustrative purposes, assuming the issuance of 500 million shares on the Effective Date, the exercise price would be $23.88 per share. |
| Expiration Date | Expiration date is the later of (i) August 25, 2008, or (ii) six months after the Effective Date. |
| Anti-Dilution | Mechanical anti-dilution only (e.g., stock splits, stock dividends, etc.). No economic anti-dilution. |
| SEC Registration | Both Warrants and underlying New Calpine Common Stock will be Section 1145 eligible and freely transferable. No registration required. |
| Implementation | Issuance of Warrants, as well as customary provisions, including without limitation a stipulation between the Debtors and the Creditors<br><br>Committee as to New Calpine Total Enterprise Value of $18.95 billion (to which the Equity Committee does not object), shall be incorporated into the Plan. The Debtors shall file a motion to modify the Plan to make it consistent with this Term Sheet. Unless otherwise agreed by the Parties, this Term Sheet shall be of no further force and effect, and all Parties reserve their rights to proceed as if the Term Sheet had not been executed if the Plan (as to the distribution of Warrants to Interest Holders) and the motion to approve the modification to incorporate the Warrants are not approved by the Bankruptcy Court either on the record at a hearing or by entry of the Confirmation Order on or before December 20, 2007. |

K&E 12307615.1

| Plan Treatment | Holders of Allowed Class E-1 Interests shall receive their pro rata distribution of the Warrants as their sole recovery under the Plan on account of such Allowed Class E-1 Interests, regardless of the ultimate total amount of Allowed Claims. |
| --- | --- |
| Treatment of Equity Securities Claims | Term Sheet is conditioned upon Plan providing that Equity Securities Claims shall be satisfied solely by available insurance proceeds, if any. |
| Documentation | Subject to definitive documentation satisfactory to the Parties. |

* The intent is for the Warrants, when issued, to have a sum certain defined for both the notional amount and the exercise price per share as described above, whether based on estimates, agreement among the Parties, or otherwise.

\*       \*       \*       \*       \*

*(the remainder of this page is intentionally left blank)*

3

December 18, 2007

-----------------    --------------------------

CALPINE CORPORATION, et al., Debtors
and Debtors in Possession

By: /s/ David R. Seligman
      Counsel to the Debtors

-----------------------    -----------------

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF CALPINE CORPORATION

By: /s/ Philip C. Dublin
      Counsel to the Official Committee of
      Unsecured Creditors

-----------------    --------------------------

OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF CALPINE
CORPORATION

By: /s/ Gary L. Kaplan
      Counsel to the Official Committee of
      Equity Security Holders

K&E 12307615.1

**Exhibit**

| | |
|---|---|
| MB Estimated Claims Midpoint | $21,085 |
| Distributable Cash | 1,039 |
| Other Non-Operating Asset Value | 494 |
| Total Net Claims | $19,552 |
| | |
| % Appreciation | 15.0% |
| | |
| TEV | $22,485 |

| | |
|---|---|
| TEV | 22,485 |
| MB Debt Net of Project Cash | 11,037 |
| Plus Corporate Cash | 494 |
| Equity Strike Price | $11,942 |

Exhibit 2

## Instructions for passing out PowerUp t-shirts

Thank you for helping to pass out the PowerUp t-shirts to all employees at your site. Please remind people to keep their shirts handy so that we can wear them as a company when the stock price gets to $5.00.

- One coordinator per each Calpine site will be responsible for the distribution, inventory, and return of shirts
- Check number of shirts delivered against inventory sheet (discrepancies, call Melissa Morlan at BreakThru Marketing 650-372-3300 ext. 307)
- Distribute one shirt to each employee (very important as we have just enough for each employee!)
  - Suggestion: get a list of each employee name and check off as they receive their shirt (this worked well for me here in San Jose and is recommended for the larger sites)
  - Mark off each size shirt distributed on sheets provided
  - Only give shirts to Calpine employees working at your site (temps ok, but not external contractors)

have been distributed. Left over shirts are to be sent back to Melissa at they will be redistributed to other sites needing different Fill out the order sheet with sizes and quantities

Marketing 650-372-3300 ext. 307 here in the San

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re: )

Calpine Corporation, et al )

Debtors )

Chapter 11
Case No. 05-60200 (BRL)
Jointly Administered

## AFFIDAVIT OF SERVICE

I, Elias A Felluss, shareholder in Calpine Corporation, *Pro Se*, being duly sworn according to law, deposes and says I am the petitioner in this
## " STATEMENT OF ISSUES AND
## DESIGNATION OF THE RECORD ON APPEAL FROM FINAL ORDERS
## OF THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK " in the above captioned case.

On February 6, 2008, I caused copies of the Motion in the above captioned cases, filed in the US Bankruptcy Court, Southern District, NY to be served on the parties attached hereto as **Exhibit A** via Priority Mail with confirmed delivery and emailed to known email recipients when their address' were known.

Dated: February 6, 2008

Elias A Felluss, Petitioner
Pro Se
Centerport, New York
County of Suffolk
71 Centershore Road
Centerport NY 11721
Tel (631)262-1876
Email: Felluss@optonline.net

Subscribed and sworn to (or affirmed) before me on this 6th day of February 2008, by

Elias A Felluss

personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notarial Signature

BRIAN McCABE
Notary Public, State of New York
No. 4947708
Qualified in Suffolk County
Commission Expires 2/27/20 11

## Exhibit A

Parties Counsel
SONNENSCHEIN NATH & ROSENTHAL
LLP
By: /s/ Peter D. Wolfson
Peter D. Wolfson (PDW-5956)
Carole Neville (CN-5733)
Matthew B. Stein (MBS-0062)
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800

Debtors
KIRKLAND & ELLIS LLP
David Seligman c/o
      Alexandra Shaw Kelly
Richard M. Cieri
Edward Sassower
Matthew Allen Cantor
Robert G. Burns
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone: (212) 446-4800

Official Committee of Unsecured
Creditors

AKIN GUMP STRAUSS HAUER & FELD
LLP
Michael S. Stamer
Philip C. Dublin
Alexis Freeman
David M. Zensky
Abid Qureshi
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000

TransCanada PipeLines Limited,
NOVA Gas et al

ELROD, PLLC
David W. Elrod
Craig Tadlock
500 N. Akard Street
Suite 3000
Dallas, Texas 75201
Telephone: (214) 855-5188

Harbinger Capital Partners
Master Fund I, Ltd. and

Harbinger Capital Partners
Special Situations Fund
L.P. (including any affiliates
thereof)

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Kenneth H. Eckstein
Joshua K. Brody
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

FORMAN HOLT ELIADES & RAVIN LLC
Harry M. Gutfleish (HMG-6483)
Joseph M. Cerra (JMC-0903)
888 Seventh Avenue
New York, New York 10106
Tel: (212) 707-8500
Fax: (212) 707-8511
80 Route 4 East, Suite 290
Paramus, NJ 07652
Tel: (201) 845-1000
Fax: (201) 845-9112

Simpson Thatcher et al
Peter Panatelo
425 Lexington Avenue
New York, NY 10017

Gary Kaplan
Fried Frank and Jacobson
1 New York Plaza
New York, NY 10004

Patricia Schrage
US Securities Exchange **Commission**
3 World Financial Center, Suite
400
New York, NY 10281-1022
212) 336-1100

Paul Schwartzburg
U S Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004